O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA ROSE AVILA,<br><br>          Plaintiff,<br><br>          v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>          Defendant. | Case No. 2:16-cv-07746-KES<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Julia Rose Avila ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Disability Insurance Benefits ("DIB"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

**I.**

**BACKGROUND**

Plaintiff suffered a work-related injury in October 2010 involving hitting her head and injuring her right shoulder. Administrative Record ("AR") 27, 260-278, 420-22. Plaintiff applied for DIB on October 22, 2012, alleging the onset of

disability on October 29, 2010. AR 160-161. An ALJ conducted a hearing on March 30, 2015, at which Plaintiff, who was assisted by a non-attorney representative, appeared and testified. AR 48-69. The ALJ issued an unfavorable decision on May 28, 2015. AR 25-39. Plaintiff retained counsel to pursue this appeal. Dkt. 17, Joint Stipulation ("JS") at 2.

The ALJ found that Plaintiff suffers from the severe impairments of right shoulder tendinopathy, patellofemoral osteoarthritis, degenerative disc disease of the cervical and lumbar spines, depression, and anxiety. AR 27. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the additional limitations that "she is limited to frequent pushing/pulling and frequent overhead lifting with the right upper extremity." AR 29.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform her past relevant work as a substance abuse counselor and psychological aide. AR 37. Alternatively, if Plaintiff's RFC was narrowed by her being "unable to have more than occasional contact with all others," then the ALJ found that she could perform work as a laundry folder, garment bagger, or basket filler. AR 37-38. The ALJ therefore concluded that Plaintiff is not disabled. AR 39.

## II.
## ISSUES PRESENTED

<u>Issue No. 1</u>: Whether the ALJ properly evaluated Plaintiff's psychological impairments.

<u>Issue No. 2</u>: Whether the ALJ properly evaluated Plaintiff's physical limitations.

<u>Issue No. 3</u>: Whether the ALJ properly evaluated Plaintiff's subjective complaints of pain.

<u>Issue No. 4</u>: Whether the ALJ properly evaluated Plaintiff's credibility.

Issue No. 5: Whether the hypotheticals posed by the ALJ to the Vocational Expert accurately reflected Plaintiff's physical and mental limitations.

See JS at 2.

## III.

## DISCUSSION

**A.     ISSUE ONE:  Plaintiff's Psychological Impairments.**

Plaintiff's portion of the JS repeats some of Plaintiff's mental health diagnoses and argues that her mental health conditions, when considered in combination with her pain, render her unable to work.  JS at 3, 7.

**1.     Summary of the ALJ's Analysis and Findings.**

The ALJ found that Plaintiff's mental impairments of depression and anxiety were "severe" because they "cause moderate limitations in social functioning." AR 27.

Next, the ALJ found that Plaintiff's mental impairments do not equal or exceed Listings 12.04 or 12.06.  AR 28.  The ALJ found "moderate" difficulties with social functioning based on evidence that Plaintiff "has become withdrawn, does not socialize, and has difficulty getting along with her husband and family." AR 28, citing AR 193-94 (Plaintiff's Adult Function Report).  The ALJ found that all other limitations caused by Plaintiff's mental impairments were mild.  AR 28. Regarding "attention and concentration," the ALJ cited the records of Plaintiff's treating psychiatrist, Dr. Susan Wallace, M.D., who treated Plaintiff from 2009 to 2015 and opined Plaintiff was "generally functioning pretty well" and suffering only "mild symptoms."  AR 28, 1155 (records of visit to Dr. Wallace from January 10, 2011); see also AR 985; 1240; 1361; 1390; 1659; 1722; 1799; 1869; 1970; 1974; 1978; 1982; 1986 (records of Plaintiff's visits to Dr. Wallace from December 2009 to January 2015).

Plaintiff was also seen on February 9, 2011, by psychologist Dr. Gunilla Karlsson, Ph.D. at the Vanguard Psychiatric Group, assisted by Dr. Selina

Matthews, Ph.D. AR 384-403. Drs. Karlsson and Matthews opined that Plaintiff suffered from "[a]verage clinical anxiety" and "[m]ild clinical depression." AR 392. Dr. Karlsson assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55. AR 396. The ALJ gave the opinions of Dr. Wallace "greater consideration" than those of Dr. Karlsson because Dr. Wallace had an ongoing treating relationship with Plaintiff, whereas Dr. Karlsson only saw Plaintiff once. AR 32.[1]

Ultimately, the ALJ did not include any limitations related to social functioning in Plaintiff's RFC. AR 29. The ALJ did, however, ask the VE to consider an alternative RFC which included a limitation that Plaintiff have "no more than occasional contact with others for mental reasons." AR 65. The VE testified that while the additional limitation would preclude Plaintiff's past relevant work, there were still other jobs available. AR 65-66. Regarding work as a garment bagger, the VE testified that per the Dictionary of Occupational Titles ("DOT"), it requires the lowest level of reasoning skills and would not require anything beyond "simple work." AR 68-69.

### 2. Plaintiff Has Failed to Show That the ALJ Erred in Evaluating Her Mental Impairments.

Plaintiff's portion of the JS does not suggest any psychological restrictions that should have been included in Plaintiff's RFC or present any arguments that Plaintiff's mental impairments satisfied the Listings. See JS at 3, 7. Plaintiff may be arguing that her GAF score of 55 calculated by Drs. Karlsson and Matthews evidenced "moderate" functional limitations for which the ALJ failed to account in determining Plaintiff's RFC. See Macias v. Colvin, 15-cv-00107, 2016 U.S. Dist.

---

[1] The ALJ also cited an April 26, 2013 psychiatric examination by Dr. Sharmin Jahan, M.D. which characterized Plaintiff's diagnosis as "mild." AR 34; 1440.

LEXIS 41711, at *23 (E.D. Cal. Mar. 29, 2016) (discussing GAF scores). If so, then this argument fails, because the ALJ was entitled to give greater weight to Plaintiff's treating psychiatrist, Dr. Wallace, who opined that Plaintiff was "generally functioning pretty well." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); AR 1155.

Moreover, despite his finding that Plaintiff's mental impairments did not satisfy the Listings, the ALJ nonetheless did account for mental limitations. The ALJ obtained VE testimony that someone with Plaintiff's RFC who was further restricted to no more than occasional contact with others and simple work (i.e., restrictions accounting for moderate difficulties with social functioning and concentration) could work as a laundry folder, basket filler, or garment bagger. AR 65-66. Plaintiff fails to explain how these alternative findings do not adequately account for functional limitations caused by Plaintiff's mental impairments.

**B.     ISSUE TWO:  Plaintiff's Physical Impairments.**

Plaintiff argues that the ALJ incorrectly assessed Plaintiff's RFC, because Plaintiff is "limited to lifting [no] more than 10 pounds and no repetitive movements of her right hand and arm." JS at 8. Plaintiff cites a treating note from Dr. Apramian, M.D. dated November 2, 2010 finding Plaintiff "Totally Temporarily Disabled … from 11/02/10 to 11/05/10" for purposes of workers' compensation. JS at 8, citing AR 271.[2]

   **1.     Plaintiff's Lifting Abilities.**

The ALJ found that Plaintiff could perform light work which means "lifting

---

[2] Plaintiff also argues under Issue 2 that the ALJ improperly "questioned" Plaintiff's "contention of her pain" JS at 11-12. Plaintiff's credibility is addressed below in Section D.

5

no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

In formulating the RFC, ALJ gave "considerable weight" to the January 19, 2012 opinion of Dr. Peter Newton, M.D., the orthopedist who prepared the permanent and stationary report for Plaintiff's workers compensation claim. AR 32. Dr. Newton opined that Plaintiff should not lift more than 20 pounds. AR 675. He also noted that Plaintiff "should have been able to return back to her work four weeks after her right shoulder surgery of July 11, 2011 …." AR 676.

The ALJ did not err in giving more weight to the opinion of Dr. Newton than that of Dr. Apramian. Dr. Apramian's opinion was rendered on November 2, 2010, just weeks after Plaintiff's accident in October 2010 and long before Plaintiff's corrective surgery in July 2011. AR 271; 313-314 (surgery records). By its own terms, Dr. Apramian's opinion was limited to the period from "11/02/10 to 11/05/10," and his subsequent opinion on November 8, 2010 did not include lifting restrictions. Cf. AR 271 and 287. In contrast, Dr. Newton rendered his opinions when Plaintiff's condition was "permanent and stationary."[3] AR 32, citing AR 673-76. Thus, the ALJ properly determined that Dr. Apramian's opinion of total temporary disability did not reflect Plaintiff's RFC during the period of claimed disability relevant to her DIB application. AR 37.

### 2. Plaintiff's Right Arm Use.

The ALJ found that Plaintiff was limited to only "frequent pushing/pulling and frequent overhead lifting with the right upper extremity." AR 29. In Social Security terminology, the term "frequent" means one-third to two-thirds of the time. Social Security Ruling 83-10, 1983 SSR LEXIS 30, at *14 (1983). By

---

[3] "Permanent and stationary" is the point when the worker's "condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment." Cal. Code Regs., tit. 8, § 9785(a)(8).

6

contrast, "occasional" means up to one-third of the time, and "constant" mean two-thirds or more of time. Id. at *13; Dictionary of Occupational Titles, Appendix C.

The ALJ noted Dr. Newton's opinion that Plaintiff should not engage in "repetitive lifting to or above shoulder level." AR 32, citing AR 675. Dr. Newton also opined that Plaintiff should not engage in "repetitive or prolonged overhead work." AR 675. The ALJ gave these opinions "considerable weight" based on their consistency with the medical evidence. AR 32. The ALJ also considered the opinion of consultative examiner Dr. Seung Ha Lim, M.D. AR 35. Dr. Lim opined in June 2013 that Plaintiff could "lift and/or carry 50 pounds occasionally and 25 pounds frequently," but that her "[p]ushing, pulling, and overhead reaching is limited to frequent use of right upper extremity." AR 1452. The ALJ gave Dr. Lim's opinion "some" weight, rejecting his less restrictive opinions about Plaintiff's lifting/carrying abilities because Dr. Lim failed to consider Plaintiff's subjective complaints adequately, but adopting Dr. Lim's quantified limitations on overhead pushing, pulling, and reaching with the right arm. AR 29, 35.

Plaintiff bears the burden of establishing that the ALJ's decision is based on prejudicial legal error. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (court may not reverse absent a harmful error, and plaintiff bears burden of establishing that an error is harmful). "Arguments in support of each claim of error must be supported by citation to legal authority and explanation of the application of such authority to the facts of the particular case." Hernandez v. Comm'r of Soc. Sec., 15-cv-00110, 2016 U.S. Dist. LEXIS 171595, at *4 (E.D. Cal. Dec. 12, 2016); see also Carmickle v. Comm'r of SSA, 533 F.3d 1155, 1161, n.2 (9th Cir. 2008) ("We do not address this finding because [plaintiff] failed to argue this issue with any specificity in his briefing."); Dkt. 7 at 4 ("Plaintiff shall concisely set forth plaintiff's contentions (including citations to the page(s) of the administrative record where cited evidence is found, complete citations to relevant legal authority, and definitions of medical terminology).").

Here, Plaintiff has not shown that the ALJ erred in accepting Dr. Lim's limitations on overhead pushing, pulling, and reaching. Plaintiff has not explained how Dr. Newton's opinions are meaningfully inconsistent with Dr. Lim's. Dr. Newton did not define what he meant by "repetitive" or "prolonged," and Plaintiff cites no authority defining those words for purposes of workers' compensation. Thus, Plaintiff fails to demonstrate that the RFC's preclusion of "constant" overhead work did not effectively preclude "repetitive" or "prolonged" overhead work.

C. **ISSUE THREE: Plaintiff's Pain Testimony.**

Plaintiff cites her subjective complaints and argues that "[t]he objective medical finding clearly supports Plaintiff's subjective complaint of pain." JS at 12-13.

### 1. Summary of the ALJ's Analysis and Findings.

The ALJ found that while Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms [i.e., pain] … [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 36. As reasons, the ALJ pointed to evidence that (1) Plaintiff's pain "has fairly been well controlled through physical therapy, pain medication, cortisone and epidural steroid injections," and (2) Plaintiff made inconsistent statements about her ability to perform activities of daily living. AR 36-37. The ALJ also found that the "objective medical evidence does not support greater limitations than those" in Plaintiff's RFC assessment. AR 37.

### 2. Plaintiff Has Failed to Show that the ALJ Erred in Evaluating Her Pain Testimony.

Although a lack of objective evidence supporting a plaintiff's symptoms cannot be the sole reason for rejecting his/her testimony, it can be one of several factors used in evaluating the credibility of subjective complaints. Rollins v.

Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001). Per the above-quoted portions of the ALJ's decision, the ALJ did not rely exclusively on the lack of supporting objective evidence to discount Plaintiff's pain testimony. Other evidence supporting the ALJ's stated reasons is discussed in connection with Issue Four, below.

**D.   ISSUE FOUR:  Plaintiff's Credibility.**

Plaintiff argues that the ALJ's determination that her pain testimony was not entirely credible relied on "boilerplate language" divorced from consideration of the evidence in the record. JS at 13.

As discussed above, the ALJ gave two clear and convincing reason for rejecting Plaintiff's credibility:  conservative pain management and inconsistent statements. See Section C.1, supra; Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008) (holding ALJ may discount claimant's testimony based on conservative treatment); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (holding ALJ may discount claimant's testimony based on inconsistencies or discrepancies in claimant's statements).

Both reasons are supported by substantial evidence. Regarding conservative treatment, at AR 37, the ALJ cited AR 265 (October 14, 2010 treating note saying Plaintiff is taking Tylenol, attending physical therapy, and her headache pain was "gone"), AR 829 (December 6, 2010 treating note saying "Patient reports no pain in low back and lower extremity now.… Notices occasional discomfort with certain activities. Uses heat and doing stretching exercises. Meds: none for pain."), AR 776 (despite knee pain complaints "[n]o outpatient prescriptions have been marked as taking for the 05/10/12 encounter" and "patient exercises 180 minute per week at a moderate to strenuous level"), and AR 767 ("steroid injections in 2010 with good relief"). These kinds of treatment are properly considered conservative. Parra, 481 F.3d at 750-51 (treatment with over-the-counter pain medication is conservative); Traynor v. Colvin, 13-cv-1041, 2014

U.S. Dist. LEXIS 135056, at *23-24 (E.D. Cal. Sept. 24, 2014) (pain management through "prescription medications and infrequent epidural and cortisone injections" was "conservative treatment"); Shelby v. Comm'r of SSA, 08-cv-0362, 2009 U.S. Dist. LEXIS 89730, at *45 (E.D. Cal. Sep. 25, 2009) (physical therapy is conservative treatment).

Plaintiff argues that in 2015, she "was placed on 8 separate medications for pain." JS at 12, citing AR 2000. The cited Kaiser record dated January 19, 2015 identifies Plaintiff as taking Ibuprofen and Norco for pain, but many of the other medications listed (e.g., Prozac, nasal spray, Zanaflex, Ativan, and albuterol) treat issues other than pain, such as anxiety, depression, muscle spasms, or shortness of breath. The fact that Plaintiff sometimes received prescription pain medication does not undermine the ALJ's conclusion that she received conservative pain management. See Martin v. Colvin, 15-cv-01678, 2017 U.S. Dist. LEXIS 20857, at *29-30 (E.D. Cal. Feb. 14, 2017) (overall record may justify ALJ's characterization of treatment as "conservative," notwithstanding prescription of Vicodin and Norco medications for pain).

Regarding inconsistent statements, the ALJ identified specific inconsistencies in Plaintiff's statements about the disabling effects of her pain. AR 37 (contrasting February 13, 2013 Adult Function Report at AR 190 [Plaintiff reportedly "needs assistance from husband to dress, shower & take care of her hair"]; AR 191 [she does not cook; "[h]usband does the cooking" and "[h]usband does the chores"]; and AR 192 ["[h]usband does the shopping" and "husband takes care of the finances" because Plaintiff cannot pay bills or handle a bank account] with AR 1438 [Plaintiff told consultative psychiatric examiner Dr. Sharmin Jahan, M.D. on April 26, 2013 that she is "able to eat, dress and bathe independently," that she is "able to do some household chores, errands, shopping and cooking" and that she "manages her own money."]). One inconsistent statement is a sufficiently clear and convincing reason to discount a claimant's credibility. Martin v.

Berryhill, 15-cv-01660, 2017 U.S. Dist. LEXIS 39819, at *35 (E.D. Cal. Mar. 17, 2017).

**E.      ISSUE FIVE:  The Hypotheticals Posed to the VE.**

Plaintiff argues that the jobs identified by the VE "were all at the light exertional level require [sic] the Plaintiff to lift up to 20 pounds," consistent with Plaintiff's RFC as determined by the ALJ.  JS at 18.  Plaintiff argues that the RFC is wrong, not that the hypothetical questions posed to the VE failed to match the RFC.  Id.

The ALJ may limit hypothetical questions posed to a VE to those restrictions "supported by substantial evidence" in the record, i.e., the restrictions in the RFC determined by the ALJ.  Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989).  Here, the ALJ's hypothetical question to the VE set forth all the limitations specified in Plaintiff's RFC.  Cf. AR 29 and AR 64-65.  The ALJ's finding at Step Four that a person with Plaintiff's RFC could perform Plaintiff's past relevant work was supported by the VE's testimony, and thus supported by substantial evidence.  Plaintiff has not shown error.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED.

Dated: September 21, 2017

_____
KAREN E. SCOTT
United States Magistrate Judge